IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

INGURAN, LLC,

                Plaintiff,              OPINION AND ORDER

    v.

                                            20-cv-085-wmc

ABS GLOBAL, INC., and GENUS PLC,

                Defendants.

---

INGURAN, LLC, and CYTONOME/ST, LLC,

                Plaintiff,

    v.

                                            20-cv-349-wmc

ABS GLOBAL, INC., and GENUS PLC,

                Defendants.

The parties in these two actions are already well-known to the court.  In their two, most recent patent disputes, plaintiffs Inguran, LLC, and Cytonome/ST, LLC, bring additional infringement claims based on a patent also familiar to the court based on an earlier lawsuit -- U.S. Patent No. 8,206,987 (the "'987 patent") -- and two, more-recently issued ones -- U.S. Patent No. 10,583,439 ("the '439 patent") and U.S. Patent No. 10,689,210 ("the '210 patent").  Before the court is defendants ABS Global, Inc., and Genus PLC's motion to dismiss the claims under the '987 patent as precluded by one of this court's prior judgments.  (Dkt. #37.)[1]

Because the court agrees that the judgment in *ABS Global Inc. v. Inguran, LLC*, No. 14-cv-503 (W.D. Wis. 2014) ("*ABS I*"), resolves the claims asserted in the original

---

[1] Unless otherwise noted, the citations to the docket in this opinion are to the above-captioned '085 case.

complaint in the '085 case, the court will dismiss that action. Relatedly, the court will also deny as moot plaintiff's two motions to supplement its complaint in the '085 case to assert additional infringement claims based on more recently-issued patents. (Dkt. ##57, 88.) Further, because plaintiffs assert overlapping infringement claims in the '349 case, the court will stay that case pending conclusion of the Patent Trial and Appeal Board's *inter partes* review of the '439 patent. In the meantime, should plaintiffs also wish to add additional infringement claims concerning the '210 patent, they may seek leave to amend in the '349 case, provided that in seeking leave, plaintiffs explain why those claims should proceed at this time in light of the stay of the infringement claims under the '439 patent.[2]

## BACKGROUND[3]

In the '085 case, plaintiff Inguran asserts claims against defendants ABS Global, Inc. and Genus PLC (collectively "ABS"), for infringement of the '987 patent. This patent was the same at issue in *ABS I*, in which ABS Global and Genus were found to have infringed and for which Inguran was awarded damages, including ongoing damages in the form of a reasonable royalty.

In the '085 case, Inguran now seeks to pursue claims for (1) induced infringement under § 271(b) by selling or licensing GSS machines to third parties, (2) infringement

---

[2] The other motions filed in the '085 case are mooted by the court's decision on the motion to dismiss and motions to supplement.

[3] What follows is a very brief background as context for deciding the parties' pending motions. For a more detailed explanation of the parties and the disputed technologies discussed in this opinion, the court refers uninformed readers to *ABS I*, No. 14-cv-503 (dkt. #1197) (post-trial opinion and order).

under § 271(g) by importing straws made outside the United States using the GSS technology, and (3) damages and injunctive relief for ABS's use of the GSS system to produce sexed IVF doses. As noted above, Inguran later filed a motion to file a "supplemental complaint," seeking to add a count of infringement based on the newly issued, '439 patent, which it contends is infringed by ABS's current GSS system, the SSC-B chip. On the heels of that motion, plaintiff further sought leave to file a "second supplemental complaint," asserting yet another infringement claim against the SSC-B chip, on yet another, recently-issued patent, the '210 patent. As for the '349 case, Inguran and its co-plaintiff Cytonome/ST (collectively 'ST") asserts the same infringement claim based on the '439 patent as that asserted in Inguran's proposed supplemental complaints in the '085 case.

## OPINION

### I. Motions Concerning the '937 Patent

In the '085 lawsuit, defendants seek to dismiss plaintiff Inguran's original infringement claims of the '937 patent on the basis that they are preluded as a matter of law by the final judgment in *ABS I*. Under claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (citation omitted). Whether a claim is precluded is a question of law for the court, *Cummins, Inc. v. TAS Distrib. Co.*, 700 F.3d 1329, 1335 (Fed. Cir. 2012), and as such, is appropriate for consideration at the motion to dismiss stage, *Car Carriers, Inc. v. Ford Motor*

3

*Co.*, 789 F.2d 589, 591 (7th Cir. 1986).

Under Seventh Circuit law, there are three elements to claim preclusion: (1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).[4] In the context of patent infringement, claim preclusion does not apply to claims arising after the first action to the extent that "the party elects not to have them included in the action." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed. Cir. 2012).

In the judgment entered in *ABS I*, Inguran was awarded an "ongoing royalty" for "future infringement of the '987 patent" of $1.25 per straw "sold by ABS that was processed with the infringing GSS technology, or any technology not more than colorably different, where such sale or processing took place in the United States through the remaining life of the '987 patent." *ABS I*, No. 14-cv-503 (W.D. Wis. June 8, 2020) (dkt. #1212). In an opinion and order resolving remaining disputes as to that judgment, the court further clarified that this ongoing royalty covers straws sold by ABS that were processed with GSS technology and imported into the United States for sale. *ABS I*, No. 14-cv-503 (W.D. Wis. June 5, 2020) (dkt. #1211).

In Count I of the '085 case, Inguran now asserts a claim against ABS for induced infringement by "selling, leasing, licensing or otherwise transferring interests in and rights to use GSS sorting machines to produce sexed semen to domestic third parties." (Compl.

---

[4] In *Acumed*, the Federal Circuit instructed that regional circuit law controls "general principles of claim preclusion." 525 F.3d at 1323.

(dkt. #1) ¶ 26.) Defendants seek to dismiss this claim on that basis that the judgment covers straws produced by ABS's GSS technology by third parties. In support, defendants point to the fact that they disclosed licensing of its GSS machines to third parties as one of its planned post-launch activities in *ABS I*, alerting plaintiff to inclusion of this very activity. *ABS I*, No. 14-cv-503 (W.D. Wis.) (dkt. #209) 627-28 (ABS's Global Business Development Director Jesus Martinez testifying at his deposition that ABS is considering a "fee-for-service model, a partner model, and a licensee model" for its GSS technology go-to-market strategies). Moreover, Inguran's damages expert considered ABS's plan to license to third parties or sell GSS hardware. *Id.* (dkt. #426) (3/8/16 Schoettelkotte Rept. ¶ 94 (describing expansion strategies of sale and licensing of hardware), ¶ 134 (considering relevant factors for hypothetical negotiation, including that ABS/Genus would demand an "unrestricted license" and would look for opportunities to expand, including "licensing"). Furthermore, in offering his opinion as to a reasonable royalty rate, Inguran's expert testified to the jury that ABS intended to "license the GSS technology to current XY licensees (Cogent, Semex and Goyaike) . . . almost to try and displace XY with their own technology." *Id.* (dkt. #726) (Trial Tr. at 106). For all these reasons, the court has little trouble finding that Inguran was on notice of this planned use of the patented technology.

      Defendants further argue that past practice reflects the term "sold by" in the *ABS I* judgment is not limited to straws sold by ABS, but also includes straws that ABS processes for third parties. Interpreting "sold by" broadly is supported by case law, where "sold" in the patent context is construed broadly to "encompass[] licenses, leases, and other transfers of interests in and/or rights to possess and use a patented product method, or system," as

5

Inguran argued in its motion for a preliminary injunction. (Pl.'s Br. (dkt. #8) 15 n.5 (citing *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 799 (S.D. Tex. 2009)).) On this record, therefore, the court concludes that ABS's planned practice of licensing its GSS technology to third parties was known to Inguran during the course of *ABS I*, and its damages expert also relied on this activity in his arriving at opinion as to an appropriate, ongoing royalty. Moreover, there was no indication that ST elected to hold this type of infringement for a later action. Since the judgment is reasonably interpreted to cover straws produced by third parties using GSS technology as licensed by ABS, the court agrees that Count I of the '085 case is precluded by the judgment in *ABS I*.

As for Count II, plaintiff Inguran pursues an infringement claim based on ABS "importing straws of sexed semen made using the GSS system outside the United States," then "selling and offering to sell those imported straws of sexed semen in the United States." (Compl. (dkt. #1) ¶ 40.) This claim fails to get off the ground as well. As the court previously determined in ruling on remaining disputes between the parties as to the final judgment in *ABS I*, the royalty base includes straws processed outside of the United States and imported into the United States for sale. *ABS I*, No. 14-cv-503 (dkt. #1211) (6/5/20 Op. & Order at 2). Indeed, this interpretation is entirely consistent with that judgment, encompassing straws either sold *or* processed within the United States. *ABS I*, No. 14-cv-503 (W.D. Wis. June 8, 2020) (dkt. #1212). Accordingly, the court concludes that this claim is precluded by the judgment in *ABS I* as well.

Finally, in Count III, Inguran contends that ABS infringes the '937 patent by "making sexed semen for use in in vitro fertilization." (Compl. (dkt. #1) ¶ 55.) As with

6

Count I, this planned use of sexed semen straws IVF was already known to Inguran during the original *ABS I* trial on infringement. *See ABS I*, No. 14-cv-503 (dkt. #505) (30(b)(6) deposition of ABS, which described the commercial viability of using GSS sexed semen in IVF). Similarly, Inguran's damages expert also considered this planned use in opining on a reasonable royalty, specifically testifying to the jury that this use was a factor increasing that royalty rate. *Id.* (dkt. #426) (Schoettelkotte Rept. ¶¶ 94, 134); *id.* (dkt. #718 (Schoettelkotte Trial Tr. at 95 (discussing ABS's engagement in "procedures for using the semen for IVF"). Finally, by its plain terms, the final judgment in no way restricts the use of covered straws to artificial insemination, but actually includes straws used in IVF, and Inguran fails to identify *any* support for finding that it somehow intended to hold this claim for a later case.

For these reasons, the court concludes that all of plaintiff Inguran's '987 patent infringement claims asserted in the '085 case are precluded by the final judgment in *ABS I*.

**II. Motions Concerning the '439 and '210 Patents**

While defendants' motion to dismiss the '085 case was pending, plaintiff Inguran filed two motions seeking to supplement its complaint in that case with further infringement claims based on newly-issued patents. Having dismissed the original '085 complaint, and in light of Inguran's decision to file another lawsuit concerning the '439 patent, the court will deny those motions to supplement as moot. However, ST may pursue their claims of infringement of the '439 patent in that separate lawsuit. Still, because PTAB instituted IPR proceedings on the '439 patent (*see* dkt. #113-1), the court declines to proceed with a parallel process to adjudicate those claims; instead, it will stay the '349

7

case pending conclusion of that process. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Safe Storage LLC v. Dell Inc.*, No. CV 12-1624-GMS, 2015 WL 13123362, at *1 n.4 (D. Del. Jan. 22, 2015) (granting stay *sua sponte* pending conclusion of IPR). In addition, because the arguments raised in defendants' motion to dismiss ('349 dkt. #23) may be rendered moot by PTAB's decision on the IPR petition, the court will deny that motion without prejudice to renewal if the '439 patent survives the IPR process.

This leaves ST's proposed claims under the '210 patent. For reasons that are not entirely clear, plaintiff ST did not seek to include their infringement claims based on the '210 patent in the '349 case, only filing their motion to supplement with those claims in the '085 case.[5] For purposes of judicial efficiency, however, ST may still seek to include claims of infringement of the '210 patent in the '349 case. However, in seeking leave to amend the complaint to add those claims, ST should be sure to explain why the '210 patent infringement claims should proceed at this time in light of the court's decision to stay the claims of the '439 patent in light of the IPR proceedings.

ORDER

IT IS ORDERED that:

1) In the '085 case, plaintiff Inguran, LLC's motion for preliminary injunction (dkt. #8) is DENIED AS MOOT.

2) In the '085 case, plaintiff's motion to expedite discovery (dkt. #12) is DENIED AS MOOT.

---

[5] PTAB also denied ABS's petition for IPR of the '210 patent. (Dkt. #114-1.)

3) In the '085 case, defendants ABS Global, Inc., and Genus PLC's motion to dismiss (dkt. #37) is GRANTED.

4) In the '085 case, plaintiff's motion for leave to file a reply in support of its motion for expedited discovery (dkt. #54) is DENIED AS MOOT.

5) In the '085 case, plaintiff's motion to file a reply in support of its motion for a preliminary injunction (dkt. #55) is DENIED AS MOOT.

6) In the '085 case, plaintiff's motions to file supplemental complaints (dkt. ##57, 88) are DENIED AS MOOT.

7) In the '085 case, plaintiff's motion for leave to file a surreply to ABS's motion to dismiss (dkt. #74) is DENIED.

8) In the '349 case, plaintiff's motion to consolidate cases (dkt. #12) is DENIED AS MOOT.

9) In the '349 case, defendants' motion for extension of time to respond to complaint and motion to consolidate cases (dkt. #18) is DENIED AS MOOT.

10) In the '349 case, defendants' motion to dismiss (dkt. #23) is DENIED WITHOUT PREJUDICE to renewal if the '439 patent survives IPR.

11) The clerk's office is directed to enter judgment in defendants' favor in the '085 case and close it.

12) The clerk's office is directed to STAY the '349 case pending a decision on the pending IPR. ST should provide the court with an update on that proceeding every three months, with the first update due on or before March 17, 2021.

13) The conference scheduled with Judge Crocker on December 21, 2021, is CANCELED.

Entered this 20th day of December, 2021.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        WILLIAM M. CONLEY
                                        District Judge